No. 20,190.

C. H. RICKERT, *Appellee*, v. G. PORTER CRADDOCK et al.,
*Appellants*.

SYLLABUS BY THE COURT.

1. NOTE FOR COLLECTION—*Attorney No Authority to Compromise for Less
than Amount Due Thereon.* The burden of proof rests upon him who
asserts that an attorney employed to collect or sue upon a note had
authority to compromise or settle his client's claim for less than the
amount due thereon, or who seeks to establish the fact that the client
ratified such compromise or settlement.

2. SAME—*Insufficient Evidence to Show Attorney's Authority to Com-
promise.* Upon the facts stated in the opinion it is held that the trial
court rightly directed a verdict for defendants, and that the evidence
was not sufficient to show a ratification by the client of the action of
his attorney in accepting a compromise or settlement of his claim upon
a note placed in the attorney's hands for collection.

Appeal from Morton district court; GEORGE J. DOWNER,
judge. Opinion filed May 6, 1916. Affirmed.

*G. Porter Craddock,* of Richfield, *William Easton Hutchison,*
and *C. E. Vance,* both of Garden City, for the appellants.

*Edgar Roberts,* of Elkhart, *Albert Watkins,* and *Edgar
Foster,* both of Dodge City, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The action in the district court was on a promis-
sory note. The plaintiff recovered and the defendants appeal.

On September 25, 1910, W. F. Craddock borrowed $500 from
the plaintiff and gave his note, due in six months. G. Porter
Craddock and C. H. Drew signed the note as sureties. W. F.
Craddock was at that time engaged in the mercantile business
at Richfield, Kan. In the summer of 1911 he became finan-
cially embarrassed and a large number of commercial accounts
were placed in the hands of Samuel Yaggy, an attorney of
Syracuse, for collection and adjustment. In August, 1911, the
plaintiff, at the suggestion of C. H. Drew, one of the sureties,
placed the note in the hands of Mr. Yaggy, with instructions
to bring suit, and action was commenced against all the parties
on the note. Shortly afterwards, on August 24, 1911, Mr.
Yaggy took possession of the Craddock store and for more than

a year managed the business in the interest of the creditors. Later, he made an arrangement with the two Craddocks whereby four quarter sections of land were conveyed to him, to be sold and the proceeds distributed among the creditors of W. F. Craddock and G. Porter Craddock. All of the claims in Mr. Yaggy's hands were against W. F. Craddock individually, except two—the note in question and one other upon which G. Porter Craddock was also liable.

The question involved in the appeal is whether the plaintiff's attorney, Mr. Yaggy, was authorized by the plaintiff to include the adjustment of the note in question along with the claims of the general mercantile creditors of W. F. Craddock; or, if he was not authorized so to do, the question is whether the plaintiff ratified the action of his attorney in compromising the note and accepting in full discharge thereof a *pro rata* share of the proceeds of the property turned over to the attorney for the benefit of Craddock's creditors. At the close of the evidence the court instructed the jury to find for the plaintiff for the full amount of the note.

It was the theory of the trial court that, inasmuch as Mr. Yaggy was employed solely to bring suit on the note, he was not authorized to accept anything in payment or settlement except money for the full amount due. The defendants concede that if the employment was only to collect or sue, the attorney would not be authorized to make any other settlement or adjustment of the note without further instructions or authority; but the defendants strenuously insist there was evidence to go to the jury on the question whether plaintiff had not ratified the action of his attorney in compromising the note for a *pro rata* share of the proceeds from the collections and the sale of the lands. It is true the evidence shows that long before the settlement was consummated plaintiff knew Mr. Yaggy was endeavoring to secure an arrangement for the adjustment of the claims of the creditors, and that if this should be accomplished the *pro rata* share of the proceeds was to be applied upon the plaintiff's note; but we are unable to find anything in the evidence from which the jury could have found that plaintiff understood he was to surrender his claim on the note for a *pro rata* share of the proceeds. In a letter from plaintiff to his attorney, in September, 1911, the plaintiff said: "Of

course, if it can't be made out of Craddocks, I'll look to Drew to pay me." The evidence shows that the plaintiff relied all the time on the fact that C. H. Drew, one of the signers of the note, was solvent and well able to pay the entire amount due, but plaintiff was friendly to Drew and willing to have as much as possible collected from the Craddocks.

An attorney employed to collect or bring suit on a note has in the absence of express directions no authority to compromise or settle his client's claim or to receive anything in payment thereof except money. (*Herriman v. Shomon,* 24 Kan. 387; *Jones v. Inness,* 32 Kan. 177, 4 Pac. 95; 6 C. J. 659-664.) This principle is so firmly established in the law that necessarily the burden of proof rests upon him who asserts that the attorney had express authority to compromise a claim, or who seeks to establish the fact that the client ratified a settlement or compromise made by the attorney.

We think that the most that can be said for the evidence in this case is that it shows a willingness on the part of plaintiff to have the action on the note deferred in the interest of Mr. Drew until a share of the proceeds from the sale of the land could be applied on the note, and that it fails to show that he ever consented to or ratified the action of his attorney in attempting to settle his claim in full for such share of the proceeds from the sale of the lands.

The judgment is affirmed.